UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

E.C.H.  o/b/o W.D.H. (XXX-XX-2660)       CIVIL ACTION NO. 19-cv-1675

VERSUS      CHIEF JUDGE HICKS

ANDREW SAUL      MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

W.D.H. ("Plaintiff") was born on February 9, 1999. In 2003, his mother filed a protective application for Title XVI supplemental security income (SSI) benefits for Plaintiff. The agency found that Plaintiff had a disabling speech condition and awarded benefits. Plaintiff underwent review as a child in 2014 and 2015, and his childhood disability benefits were continued.

Plaintiff attained age 18 in 2017, and the agency was required to re-determine Plaintiff's disability status under the rules applicable to adults. The initial agency redetermination decision issued and found that Plaintiff was not disabled under the adult rules. Plaintiff appealed, and Administrative Law Judge ("ALJ") Charlotte Wright held a hearing. She then issued a written decision and found that Plaintiff did not meet the adult standard for disability. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.

Plaintiff filed this appeal to seek the limited review that is available under 42 U.S.C. § 405(g). Plaintiff submitted a single-page "Memorandum" (Doc. 14), written by his

mother, that alleged that he "has always been delayed ever since he was born." The memorandum did not raise any specific issues on appeal. For the reasons that follow, it is recommended that the Commissioner's decision be affirmed.

**Summary of the ALJ's Decision**

The ALJ analyzed Plaintiff's claim under the five-step sequential analysis established in the regulations. It requires the ALJ to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there are jobs that exist in significant numbers that the claimant can perform. If, at any step, the claimant is determined to be disabled or not disabled, the inquiry ends. See Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007).

Step one is not used for redetermining disability at age 18. 20 C.F.R. 416.920(b). At step 2, the ALJ found that Plaintiff had a "learning disorder with mild cognitive impairment," which was a severe impairment within the meaning of the regulations. At step three, the ALJ found that, since June 1, 2017, Plaintiff did not have an impairment or combination of impairments that meet or equal in severity the paragraph B criteria of listing 12.11 (neurodevelopmental disorders).

Before going from step three to step four, the ALJ must assesses the claimant's residual functional capacity ("RFC") by determining the most the claimant can still do

despite his physical and mental limitations. The finding is based on all relevant evidence in the record. Perez v. Barnhart, 415 F.3d 457, 462 (5th Cir. 2005). The claimant's RFC is used at steps four and five to determine if he can still do past relevant work or adjust to other jobs that exist in the national economy. The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, but limited to performing simple, routine tasks and simple work-related decision making. Plaintiff was also limited to superficial interaction with supervisors, coworkers, and the public. Tr. 13.

At step four, the ALJ found that Plaintiff has no past relevant work. At step five, the ALJ relied on evidence from a vocational expert ("VE") and found that, since June 1, 2017, considering Plaintiff's age, education, and work experience, Plaintiff had the RFC to perform work as an industrial cleaner, a hand packager, and a kitchen helper, each of which is a light, unskilled job. Tr. 16-17. Accordingly, the ALJ found that Plaintiff was not disabled under the adult rules and, therefore, not entitled to SSI benefits after June 1, 2017.

**Evidence**

  **A. Hearing Testimony**

Plaintiff was not represented by counsel at the hearing. He was often unable to answer the ALJ's questions and told the ALJ to ask his mother those questions instead. For example, when the ALJ asked him where he had received any type of mental health treatment or counseling, he responded: "I don't know where. You have to ask my mom for that." Tr. p. 43-44. See also Tr. p. 39, 40, and 45.

Plaintiff testified that he graduated from Huntington High School. He took a combination of regular and special education classes. Tr. 40-41. He indicated that he plans to join the military or go to college. He took a test to qualify for the national guard, but he did not pass. Tr. 42. When the ALJ asked what prevents Plaintiff from working or finding a job, he responded, "I don't know." Tr. 43.

Plaintiff's mother testified at the hearing. She testified that Plaintiff has had trouble with communication since he was a young child. Tr. 50. She said that Plaintiff saw a psychologist at age 15 and again at age 17, but he was not receiving ongoing psychological treatment. Tr. 51-52.

Karyl Kuutila, a VE testified at the hearing. The ALJ asked the VE to consider an individual of Plaintiff's age and education who had no work history and was limited to (1) the performance of simple, routine tasks, (2) only occasional work-related decisions, and (3) superficial interaction with supervisors, coworkers, and the public. The VE testified that such an individual could perform work as an industrial cleaner, a hand packager, or a kitchen helper. Tr. 54.

### B. Adult Function Report

Plaintiff's mother completed an adult function report. She indicated that Plaintiff does not need assistance with personal care, but he does need to be reminded to take baths and brush his teeth. Tr. 234-35. She wrote that Plaintiff can do chores such as cleaning his own room and washing dishes, but she needs to explain how chores are done. Tr. 235. She wrote that Plaintiff has trouble putting ideas and concepts together and expressing

them in words.  She stated that things have to be explained at least twice for Plaintiff to understand.  Tr. 238.

### C. School Records

Plaintiff's high school transcript indicates that he graduated with a 2.21 GPA and was ranked 134th out of 202 students.  Tr. 206.  Jackie Marino, a teacher who knew Plaintiff for three years and saw him every day, completed a questionnaire regarding his performance at school.  She indicated that Plaintiff had "no problem" with paying attention when spoken to, sustaining attention during play/sports activities, focusing enough to finish assigned tasks, refocusing to task when necessary, carrying out single-step or multi-step instructions, organizing his things, and completing class/homework assignments.  He had only a slight problem with completing work without careless mistakes and working without distracting himself or others, but he had "an obvious problem" working at a reasonable pace and finishing on time.  Tr. 210.  Ms. Marino was able to understand "almost all" of Plaintiff's speech.  Tr. 211.  She indicated that she did not observe Plaintiff having any problems caring for himself.  Tr. 228.

Glenda Williams taught Plaintiff English in 9th and 12th grades.  She knew him for three years.  Tr. 250.  She also completed a questionnaire, but her responses differed from those of Ms. Marino.  Ms. Williams indicated that Plaintiff had "obvious problems" comprehending oral instructions, understanding school and content vocabulary, reading and comprehending written material, understanding and participating in class discussions, expressing ideas in written form, and other areas.  She indicated that he has "a serious problem" applying problem-solving skills in class discussions.  She wrote that Plaintiff

struggled with written activities and that his "functional levels are below his chronological levels/age." Tr. 253. She indicated that Plaintiff had "an obvious problem" interpreting the meaning of facial expressions and using adequate vocabulary and grammar. Like Ms. Marino, she indicated that she was able to understand almost all of Plaintiff's speech, and he did not have any problems caring for himself. Tr. 256-57.

### D. Opinions

Tiffany Jennings, Psy.D. performed a consultative psychological evaluation of Plaintiff. She administered the Montreal Cognitive Assessment ("MOCA") to assess Plaintiff's cognitive functioning. Plaintiff's score was 23/30; scores of 26 and above are considered within normal limits. Tr. 335.

Jennings also administered the WAIS-V. Plaintiff scored low average in perceptual reasoning, working memory, and processing speed. He scored borderline on verbal comprehension. His Full Scale IQ was 75, which is in the 5th percentile. Tr. 335.

Jennings diagnosed Plaintiff with mild cognitive impairment. Based on her assessment and observation of Plaintiff, she opined that he "may be experiencing deficits with cognitive abilities that would impact his ability to learn and use new information." She noted that he did not have difficulties with attending and completing tasks, nor did he have difficulties with attention, concentration, or hyperactivity. She stated that he may have difficulties with grasping abstract concepts and will need someone to manage his finances. She also opined that he may experience difficulties with social interactions with peers, but he should not experience ongoing difficulties with authority figures. Tr. 335-36. The ALJ afforded Jennings' opinion "significant weight." Tr. 15.

State agency psychological consultant Lisette Constantin, Ph.D. reviewed the Jennings report as well as school records. She found that Plaintiff's learning disorder was severe, but Plaintiff retained the ability to relate to coworkers and customers on a superficial work basis, perform routine tasks, make decisions well enough to work under the adult rules, and adapt appropriately to work situations. Tr. 67-76. The ALJ afforded Constantin's opinion "great weight." Tr. 14.

Psychological consultant Gary Lindsay, Ph.D., did not treat or observe Plaintiff. He reviewed all of the evidence and records in Plaintiff's file. Based on that review, he summarily agreed with the agency's initial decision to deny benefits. Tr. 338.

### E. Evidence Submitted to Appeals Council

After the ALJ's decision, Plaintiff filed some additional documents with the Appeals Council. The council acknowledged them but found they did not warrant changing the outcome of the decision. Tr. 1-2. The Commissioner's final decision, reviewed by the courts, includes the Appeals Council's denial of a request for review and requires the court to consider (in determining whether there is substantial evidence to support the decision) evidence that was submitted for the first time to the Appeals Council. Higginbotham v. Barnhart, 405 F.3d 332 (5th Cir. 2005).

The additional evidence included a letter from Plaintiff's mother that she was submitting a pupil appraisal report dated January 20, 2017. The report, also submitted, was prepared by a school social worker to determine whether Plaintiff continued to have an exceptionality requiring an Individualized Education Program (IEP) in high school. The

report indicated that Plaintiff had a "specific learning disability" and his impairment(s)/condition(s) were "Oral Expression and Listening Comprehension Skills."

Other evidence in this filing was a note that Plaintiff had an appointment to address ear pain, and a comment from his mother that psychiatrist Kimberly Law, M.D. had interviewed Plaintiff and diagnosed him with moderate autism spectrum disorder. Tr. 27-32. But Dr. Law's actual report was not submitted to the agency at any level.

**Standard of Review; Substantial Evidence**

This court's review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is more than a scintilla and less than a preponderance." Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

The brief filed by Plaintiff's mother did not point to any specific assignments of error. She simply argued that Plaintiff "do[es] have disabilities" and has "always been delayed ever since he was born." Plaintiff's argument is essentially that he has a neurodevelopmental disorder and should be considered disabled. But the law does not base

disability on a mere diagnosis of a disease or condition. The disease or condition must result in physical or mental limitations that prevent the claimant from performing the demands of any work that is available in significant numbers.

The regulations do allow at step three for a finding of disability, no matter the claimant's age, education, or work experience, if his condition is so severe that it meets or equals a "listed impairment" in the regulations. The ALJ afforded detailed consideration to Listing 12.11 (neurodevelopmental disorder) in her decision. Listing 12.11 is met when an individual has a neurodevelopmental disorder and meets the following criteria:

   A. Medical documentation of the requirements of paragraph 1, 2, or 3:

      1. One or both of the following:

         a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or

         b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").

      2. Significant difficulties learning and using academic skills; or

      3. Recurring motor movement or vocalization.

   AND

   B. Extreme limitations of one, or marked limitation of two, of the following areas of mental functioning:

      1. Understand, remember, or apply information.

      2. Interact with others.

      3. Concentrate, persist, or maintain pace.

      4. Adapt or manage oneself.

20 C.F.R. pt. 404. Subpt. P, App. 1, 12.11.

The ALJ focused her analysis on the paragraph B criteria, which must be satisfied to apply the listing. When assessing the four areas of functioning, the ALJ classifies the claimant's limitations in each area according to a five-point scale: none, mild, moderate, marked, or extreme. 20 CFR § 404.1520a(c)(4). A marked limitation means functioning in the area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. Tr. 11. The listing is met only if the claimant has an extreme limitation in one area, or a marked limitation in two areas.

The ALJ found that Plaintiff had a moderate limitation in the area of understanding, remembering, or applying information. She cited Ms. Marino's teacher questionnaire, which indicated that Plaintiff had "obvious" problems in reading and comprehending material and slight problems in learning new material, expressing ideas in written form, and recalling and applying previously learned material. Tr. 224. Ms. Marino did not identify any "serious" or very serious" problems. Ms. Williams' questionnaire indicated "obvious" problems in many areas of functioning and that he has "a serious problem" applying problem-solving skills in class discussions. Despite his alleged learning problems, Plaintiff was able to earn his high school diploma. Tr. 293.

On his consultative exam with Dr. Jennings, Plaintiff was unable to adequately articulate how sets of words were alike. Tr. 335. But he did successfully name three of three common animals, and his short-term memory recall was five out of five. Tr. 335.

This evidence supports the ALJ's finding that Plaintiff had only a moderate limitation in understanding, remembering, and applying information.

The ALJ next found that Plaintiff had a moderate limitation in the domain of interacting with others. The teacher questionnaires indicated that Plaintiff had "no problem" playing cooperatively, seeking attention appropriately, expressing anger appropriately, following rules, respecting adults in authority, or using appropriate language. Tr. 226, 255. Ms. Williams indicated that he had an obvious problem with interpreting facial expressions and using adequate vocabulary and grammar. Tr. 255. This evidence supports the ALJ's finding that Plaintiff had a moderate limitation in interacting with others.

The ALJ next found that Plaintiff had a moderate limitation with regard to concentrating, persisting, or maintaining pace. The ALJ again cited the teacher questionnaires. Ms. Marino indicated that Plaintiff had no problem paying attention when spoken to directly, sustaining attention during activities, focusing long enough to finish an assigned task, and refocusing when necessary. Tr. 225. However, Ms. Williams indicated that Plaintiff had an obvious problem with focusing long enough to finish an assigned activity and refocusing to task, as well as a slight problem with paying attention when spoken to and working without distracting himself or others. Tr. 254. During his evaluation with Dr. Jennings, Plaintiff was able to maintain a conversational exchange. Tr. 334. His attention score in the mental status exam was six out of six. Tr. 335. This evidence supports the ALJ's finding that Plaintiff has a moderate limitation in the domain of concentrating, persisting, or maintaining pace.

Finally, the ALJ found that Plaintiff had a moderate limitation with regard to adapting or managing oneself. One the teacher questionnaires, both Ms. Marino and Ms. Williams indicated that they had not observed Plaintiff to have any problems in the domain of caring for himself. This included handling frustration properly, being patient when necessary, taking care of personal hygiene, identifying and appropriately asserting emotional needs, and caring for physical needs. Tr. 228, 257. Plaintiff's mother indicated in the adult function report that Plaintiff does not need assistance with personal care, but he does need to be reminded to take baths and brush his teeth. Tr. 234-35. She wrote that Plaintiff can do chores such as cleaning his own room and washing dishes, but she needs to explain how chores are done. Tr. 235. This evidence supports the ALJ's finding that Plaintiff had a moderate limitation in the domain of adapting or managing himself.

Because Plaintiff only experienced moderate limitations in the domains of functioning identified in paragraph B, Plaintiff did not meet the criteria of Listing 12.11. The ALJ's finding on this point is supported by substantial evidence in the record. The court also finds that the ALJ properly applied the appropriate legal standards.

The VE identified jobs that she found Plaintiff could perform with his RFC, age, education, and work experience. The ALJ accepted that testimony and found at step five that Plaintiff was not disabled. Plaintiff points out that he has limitations, but those limitations were fairly included in his RFC, and he does not point to any additional physical or mental limitations that are inconsistent with the ability to perform the jobs identified by the VE. The Commissioner's decision is supported by substantial evidence.

**New Evidence**

Plaintiff attached to her complaint a report from Dr. Kimberly Law that is dated May 22, 2019, which was soon after the ALJ's April 17, 2019 decision but before the Appeals Council's November 25, 2019 denial. Plaintiff did not submit the report at any level of the agency proceeding.

Dr. Law's report stated that Plaintiff came to her with a chief complaint that, "He was no longer disabled after June 2017." Law wrote that Plaintiff has difficulty completing tasks, has issues remembering, lacks initiative, and is confused if his schedule changes. Plaintiff denied mood swings or crying spells. Law noted that he was particular about his belongings, had few friends, and was socially isolated. His concentration was poor. His physical health was good, and his psychiatric history reflected no history of hospitalization, outpatient treatment, or psychiatric medications. He was alert to person and place, and his speech was slow but normal. Dr. Law assessed a severe impairment in judgment and that Plaintiff was lacking in insight. She diagnosed moderate intellectual disability, autistic disorder, and ADHD. Plaintiff refused any medication, and no treatment was prescribed.

This report was not submitted to the agency, so the court does not consider it when assessing whether the Commissioner's final decision is supported by substantial evidence. The court is limited to determining whether to remand for consideration of the new evidence. Haywood v. Sullivan, 888 F.2d 1463 (5th Cir. 1989). Such a remand is allowed only upon a showing that the report is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g) (sentence 6).

Plaintiff has not shown good cause for not submitting Dr. Law's report to the agency. "The mere fact that a medical report is of recent origin is not enough to meet the good cause requirement." Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989). Plaintiff waited until after the ALJ's adverse decision to seek the report, then his mother mentioned it in a letter to the Appeals Council, but the report itself was never filed with the agency. There is no explanation for the omission, so good cause is not found.

New evidence must also be material, meaning there exists the reasonable probability that, if it had been presented to the Commissioner, it would have changed the outcome. Latham v. Shalala, 36 F.3d 482, 483 (5th Cir. 1994). There is little to suggest that Dr. Law's report would have changed the outcome of the Commissioner's decision. The report confirms that Plaintiff suffers from an intellectual disability, which the ALJ already found. But it does not establish that the intellectual disability caused limitations severe enough to satisfy listing 12.11 at step three, as it does not indicate that Plaintiff is more than moderately impaired in any of the four domains of functioning. The report also does not undermine the ALJ's RFC finding (limited to simple, routine tasks, simple work-related decision making, and superficial interaction with supervisors, coworkers, and the public) or her step five decision that Plaintiff is capable of performing the demands of some simple, unskilled jobs despite his limitations. The Law report is not material within the meaning of the law, so remand for its consideration is not permitted.

Accordingly,

It is recommended that the Commissioner's decision be affirmed.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 15th day of December, 2020.

Mark L. Hornsby
U.S. Magistrate Judge